The appealing parties have shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the Industrial Commission Form 21, Agreement for Compensation for Disability, approved by the Industrial Commission on August 24, 1992, in the Pre-Trial Agreement, which was filed on October 13, 1995, and at the hearing as
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated and that there is no question as to the misjoinder or nonjoinder of parties.
3. Defendants accepted plaintiff's claim of carpal tunnel syndrome to the right hand and have paid temporary total disability benefits since September of 1990 through the date of hearing before the Deputy Commissioner.
4. Plaintiff's compensation rate is $132.81 per week.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 40 years old, married and had a history of unskilled work. The plaintiff did not complete high school but obtained a GED in 1984.
2. In or about September of 1990, the plaintiff contracted the compensable occupational disease of carpal tunnel syndrome to her right hand and was paid temporary total disability benefits which were paid through the time of the hearing before the Deputy Commissioner. At the time of plaintiff's injury, she was a turkey eviscerator at defendant-employer's plant.
3. Following the plaintiff's development of carpal tunnel syndrome, she was treated by a number of physicians including Dr. Sutton, the plant physician, Drs. Getz, John Fishman, John F. Camp and Paul K. Jaszewski. The plaintiff was diagnosed with reflex sympathetic dystrophy by Dr. Fishman who performed several stellate blocks along with a stellate phenol block. The plaintiff was subsequently referred by Dr. Fishman to Dr. Camp, at the Pain Management Center. At the Pain Management Center, plaintiff subsequently came under the care of Paul K. Jaszewski, M.D.
4. On October 20, 1993, the plaintiff underwent a functional capacity evaluation ordered by Dr. Jaszewski. The functional capacity evaluation revealed that plaintiff was limited to sedentary work with simple grasping with the right hand.
5. Dr. Jaszewski released plaintiff as of October 27, 1993, believing she had reached maximum medical improvement. Dr. Jaszewski gave plaintiff a 10% permanent partial disability rating to her right extremity. Dr. Jaszewski restricted plaintiff with respect to her right extremity by limiting plaintiff to lifting 10 pounds infrequently and 5 pounds frequently. Plaintiff had no problems or limitations with her left extremity.
6. On November 11, 1993, the plaintiff was involved in a serious automobile accident in which she was a passenger in a car involved in a head-on collision and in which she sustained severe injuries including a closed head injury, fractured first rib, fractured traverse process at L4, fractured head first metatarsal on the right and lacerations and contusions. The automobile accident did not cause any aggravation of the compensable occupational disease. The injuries resulting from the accident rendered the plaintiff unable to work for the defendant-employer or for any other employer after November 11, 1993.
7. Following plaintiff's automobile accident, she was treated by Rudolph J. Maier, M.D., a neurologist. As of the time Dr. Maier saw plaintiff, he believed her carpal tunnel syndrome in her right hand had resolved. He saw no evidence of reflex sympathetic dystrophy. Dr. Maier did take a history that plaintiff continued to experience pain and aching in her right upper extremity and had trouble lifting and picking up objects. Dr. Maier did agree with the limitations as listed by Dr. Jaszewski in October of 1993.
8. There is insufficient evidence of record from which to prove by the greater weight that plaintiff's current disability, if any, is causally related to the admittedly compensable occupational disease that she contracted while working for the defendant-employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a result of plaintiff's 1990 carpal tunnel syndrome, plaintiff is entitled to temporary total disability compensation at a rate of $132.81 per week for the time period agreed upon in Inudstrial Commission Form 21, dated August 24, 1992, through November 11, 1993. Any disability after November 11, 1993, was not causally related to the compensable carpal tunnel syndrome but was the result of the automobile accident on that date. N.C. Gen. Stat. § 97-29; § 97-52.
2. As a result of the 1990 carpal tunnel syndrome, plaintiff is entitled to compensation for the ten percent permanent functional impairment to her right extremity at the rate of $132.81 per week for 20 weeks. N.C. Gen. Stat. § 97-31.
3. Defendants are entitled to a credit for any overpayment of temporary total disability paid to the plaintiff after November 11, 1993. This credit shall be allowed to reduce the amount of permanent partial disability compensation due plaintiff. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for continuing temporary total disability benefits is hereby DENIED.
2. If not already paid, defendants shall pay the plaintiff permanent partial disability compensation of $132.81 per week for 20 weeks. Compensation due which has accrued shall be paid to plaintiff in a lump sum subject to a credit for defendants for any overpayment of temporary total disability benefits paid to plaintiff since November 11, 1993.
3. If plaintiff is entitled to any benefits for her permanent partial disability after the defendant has taken the credit for any overpayment of temporary total disability compensation, a reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph two of this Award is approved for plaintiff's counsel and shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
4. Each side shall bear its own costs.
This the _____ day of June 1998.
 S/ _________________ LAURA K. MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________________ THERESA B. STEPHENSON COMMISSIONER
LKM/jth